UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. FRAZIER, JR., )<br> )<br>     Plaintiff, )<br> )<br>     vs. )<br> )<br>PAPA JOHN'S USA, INC. and PAPA )<br>JOHN'S INTERNATIONAL, INC. )<br> )<br>     Defendants. ) | Case No. 4:19 CV 892 CDP |

## **MEMORANDUM AND ORDER**

Plaintiff Michael Frazier is a former employee of Defendant Papa John's USA, Inc. (PJUSA), a wholly-owned subsidiary of Papa John's International, Inc. Frazier brings this suit alleging that PJUSA managers racially discriminated against him by repeatedly denying him promotions, paying him less than other similarly-situated employees, denying him vacation pay, and retaliating against him for raising complaints about an employee's job performance.

On May 16, 2017, Frazier electronically signed an arbitration agreement in which he agreed to submit any claims relating to his employment with PJUSA to binding arbitration. Pending before the Court is PJUSA's motion to enforce the arbitration agreement, compel the parties to arbitration, and dismiss Frazier's claims, or in the alternative, stay proceedings pending completion of the

arbitration. Frazier opposes the motion, asserting that the agreement is contractually invalid under Missouri law. After careful consideration, I conclude that the determination of the validity of the arbitration agreement has been delegated to an arbitrator, and as all of Frazier's claims in this case are encompassed by the agreement, I will grant PJUSA's motion to compel arbitration and stay the case.

## **Background**

PJUSA owns and operates several Papa John's stores in the St. Louis area. PJUSA employed Frazier during three different periods: 1) March 22, 2006 through December 30, 2006; 2) April 3, 2015 through November 16, 2015; and 3) May 16, 2017 through November 14, 2017. Frazier held the position of Shift Manager during each period of employment. On May 16, 2017, the day he began his third stint of employment, Frazier electronically signed an "E-Signature Disclosures & Consent" agreement (Consent Form) which stated that he agreed to "electronically access, receive, review, sign, and authenticate" PJUSA materials. ECF 12-1. On May 16, 2017, Frazier also electronically signed the Arbitration Agreement at issue. ECF 10-1 at pg. 5.[1] The Agreement states, in part:

---

[1] Both the E-Signature Disclosures & Consent form and Arbitration Agreement contain the printed name "Fraizer Jr, Michael," along with a unique User ID #324581. This reflects a different spelling of the last name "Frazier" as compared to Plaintiff's complaint. Plaintiff has not challenged the authenticity of his signature on this basis.

> The Parties agree to resolve any and all claims, disputes, or controversies arising out of or relating to your employment with Papa Johns ("Covered Claims"), exclusively by final and binding arbitration to be administered by a neutral dispute resolution agency agreed upon by the Parties at the time of the dispute.

*Id*. at 1. The agreement specifies that Covered Claims includes "claims for . . . discrimination or harassment on the basis of race . . . unlawful retaliation . . . and any violation of any federal, state, or other governmental law, statute, regulation, or ordinance." *Id*. at 2. Additionally, the agreement contains a delegation provision which states: "The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including any contention that this Agreement is void or unenforceable." *Id*. at 3.

## **Legal Standards**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*., establishes "a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc*., 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether the 'making of the agreement for arbitration or the failure to comply therewith' is at issue." *Medcam, Inc. v. MCMC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4). In other words,

3

when ruling on a motion to compel arbitration, the Court's analysis is limited to "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute falls within the scope of the arbitration agreement." *Id*.; *see also Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011).

Missouri contract law applies "to determine whether the parties have entered a valid agreement to arbitrate." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (citing *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006)). "Missouri law requires 1) an offer, 2) acceptance, and 3) consideration to form a valid and enforceable contract." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). The party seeking to compel arbitration bears the burden of proving the arbitration agreement is valid and enforceable. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. Ct. App. W.D. 2011).

Arbitration agreements often contain delegation provisions like the disputed provision here. A delegation provision is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Shockley*, 929 F.3d. at 1018 (citing *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018)). Delegation provisions commit "gateway questions of arbitrability" to the

4

deliberation of an arbitrator. *Id*. (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "These gateway questions may include determining the validity of the arbitration agreement itself." *Id*. The party seeking to compel arbitration must prove there is "clear and unmistakable evidence" that the parties intend to arbitrate questions of arbitrability. *Soars*, 563 S.W.3d at 114 (citing *Rent-A-Ctr.*, 561 U.S. at 69 n.1 (2010)). On the other hand, a party attacking the validity of a delegation provision must specifically challenge the delegation provision by name, separate and apart from a challenge to the validity of the entire arbitration agreement. *Shockley*, 929 F.3d at 1018.

Like an arbitration agreement, "a delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*. (citing 9 U.S.C. § 2). In other words, a delegation provision is to be analyzed as "simply an additional, antecedent agreement that operates like any other contract," and must be independently supported by the requisite contractual elements—"offer, acceptance, and bargained-for consideration." *Shockley*, 929 F.3d at 1018. Because this initial question of arbitrability is in dispute, *Shockley* sets forth the inquiry I must make:

> If we find that the delegation provision is a valid contract under Missouri law—having offer, acceptance, and bargained-for consideration—then our inquiry is at an end, and all other questions

>must go to an arbitrator. Conversely, if the delegation provision is not
>a valid contract because it lacks any of the three requisite elements,
>we may further review the challenged arbitration agreement's validity.

*Shockley*, 929 F.3d 1012, 1018 (8th Cir. 2019) (internal citations omitted).

## Discussion

As a threshold matter, Frazier properly challenges the validity of the delegation provision by identifying it by name throughout his memorandum in opposition to PJUSA's motion to compel. ECF 11 at pg. 3. Accordingly, I am permitted to consider the antecedent question of the delegation provision's validity. *Rent-A-Ctr.*, 561 U.S. at 72; *Shockley*, 929 F.3d at 1018.

Frazier contests the validity of the delegation provision on two grounds. First, Frazier argues that PJUSA failed to prove the parties accepted the agreement and delegation provision. In support, Frazier asserts that 1) the agreement is not signed by a PJUSA representative, and 2) the agreement does not contain Frazier's handwritten signature. Frazier additionally notes that he has no "independent recollection" of signing the agreement, nor being given a physical copy of the agreement. Second, Frazier argues that the agreement and delegation provision are invalid for lack of consideration. On this point, Frazier argues that 1) the agreement is illusory because PJUSA retained the right to unilaterally modify its terms, and 2) Frazier's continued at-will employment is insufficient, standing alone, to constitute consideration.

The agreement's delegation provision clearly and unmistakably evinces the parties' intent to arbitrate threshold questions of arbitrability. The delegation provision contained in the agreement is nearly identical to the delegation provisions in *Rent-A-Center* and *Soars*, which were recognized by the U.S. Supreme Court and Missouri Supreme Court, respectively, to manifest the parties' intent to arbitrate questions of arbitrability. *Rent-A-Ctr.*, 561 U.S. at 69 n.1; *Soars*, 563 S.W.3d at 114. Further, the agreement makes specific reference to the American Arbitration Association (AAA) Employment Arbitration Rules and Mediation Procedures and provides a link to a website where the rules may be found. ECF 10-1 at pg. 1. The AAA's Employment Arbitration Rules contains a delegation provision.[2] A reference to an identifiable, ascertainable set of AAA Rules in an arbitration agreement reflects the parties' intent to incorporate delegation provisions contained therein. *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017) (holding that an arbitration agreement's reference to the AAA's Commercial Arbitration Rules was sufficient to establish the parties' intent to incorporate an identical delegation provision into the agreement).

---

[2] "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 6(a) (Am. Arb. Ass'n 2009).

7

The agreement (and delegation provision) is sufficiently definite and specific to constitute an offer inviting Frazier's acceptance. Immediately above Frazier's dated and time stamped electronic signature, the agreement concludes:

> By signing electronically below, and also by accepting or continuing employment after the Effective Date, you acknowledge that you have read this Agreement, have had the opportunity to discuss it with Papa John's or your own legal counsel, understand its terms, and agree to be bound by those terms as a condition of your employment with Papa John's.

ECF 10-1 at pg. 5. This provision reflects an offer from PJUSA inviting acceptance from Frazier to submit covered claims to arbitration, and to delegate threshold determinations of arbitrability to arbitration.

Frazier has not presented any case law to support his proposition that the lack of a signature from a PJUSA representative renders the delegation provision invalid. PJUSA is identified at the outset—and throughout the agreement—as a "Party" to the agreement, ECF 10-1 at pg. 1, and Frazier admits he recalls "reviewing some information on a computer at the Papa John's store." ECF 11 at pg. 3. Accordingly, the lack of a signature from PJUSA does not lead me to question the authenticity of the agreement (including the delegation provision), PJUSA's intent to be bound, or Frazier's acceptance of its terms.

Additionally, the fact that Frazier did not handwrite his signature is immaterial. On the front page of the Consent Form, immediately below an all-caps message reading "PLEASE READ THE FOLLOWING CAREFULLY," the Consent Form reads: "By checking the box labelled 'I Agree,' you are agreeing to electronically access, receive, review, sign, and authenticate Materials related in any way to my employment with Papa Johns, in place of hard copy/paper documents and handwritten signatures." ECF 12-1 at pg. 1. The Consent Form reiterates that, by signing, Frazier ". . . [agreed] that [his] electronic signature is the equivalent of a handwritten (or wet) signature, with all the same legal and binding effect." *Id*. at pg. 5. Frazier's printed name, User ID number, and the date of signing are found at the end of both the Consent Form and arbitration agreement. ECF 10-1 at pg. 5; ECF 12-1 at pg. 6. In its reply brief, PJUSA correctly notes that electronic signatures are afforded full legal recognition under both Missouri and federal law, so the agreement is not rendered invalid simply because Frazier signed it electronically.[3] Absent evidence to the contrary, I find no reason to question the

---

[3] *See* Mo. Rev. Stat. § 432.230 ("A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form"); Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001(a)(2) (". . . with respect to any transaction in or affecting interstate commerce . . . a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation")

authenticity or legally binding effect of Frazier's electronic signatures on the Consent Form and agreement.

Nor do I find persuasive Frazier's assertion that his failure to recall signing the agreement somehow invalidates his acceptance of the delegation provision. Frazier maintains he does not specifically recall signing the agreement nor being given a copy, but again, he admits that he generally recalls "reviewing some information on a computer at the Papa John's store." ECF 11 at pg. 3. "The law is clear that a signer's failure to read or understand a contract is not, standing alone, a defense to the contract." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 509 n.4 (Mo. banc 2012) (citing *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972)). Further, the Consent Form provided instructions on how to electronically access PJUSA materials, as well as instructions on how to request paper copies from PJUSA's Human Resources Department. ECF 12-1.

Frazier also contends that the agreement (and delegation provision) is invalid for lack of consideration. Frazier specifically highlights this provision:

> This Agreement may be modified or terminated by Papa John's upon thirty (30) calendar day's written notice. Any modifications or termination shall be prospective only and shall not apply to any claims about which Papa John's has been notified or for which arbitration

> already has been requested pursuant to the procedures set forth in this Agreement.

ECF 10-1 at pg. 4. Frazier asserts that PJUSA's right to unilaterally amend the agreement renders the delegation provision illusory. Frazier's argument primarily relies on *Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644 (Mo. Ct. App. E.D. 2019), in which the Missouri Court of Appeals held that an arbitration agreement granting an employer "sole discretion" to "modify or discontinue the [Dispute Resolution Program] at any time by giving Employees 30 calendar days' notice" constituted an unenforceable illusory agreement. *Id*. at 652.

Frazier fails to account for the Missouri Supreme Court's decision in *Soars*, which establishes a different analytical framework in the context of threshold arbitration delegation determinations:

> Whether the Agreement as a whole contains illusory provisions is for the arbitrator to determine so long as the delegation provision, *standing alone*, is valid. Through the delegation provision, both parties have mutually agreed to arbitrate all threshold questions of arbitrability. It is a mutual promise to arbitrate any threshold questions of arbitrability which may arise. Because neither ESM nor Soars retains any unilateral right to amend the delegation clause nor avoid its obligations, the delegation clause is bilateral in nature and consideration is present.

*Soars*, 563 S.W.3d at 117 (emphasis added). In effect, the *Soars* holding requires me to consider the delegation provision separate and apart from the

remainder of the agreement. Whether the agreement contains illusory promises is a determination to be made by the arbitrator—not this Court—so long as the delegation provision does not provide PJUSA with a unilateral right to modify the terms of the delegation provision itself. The delegation provision at issue plainly does not. Accordingly, because the delegation provision in *Soars* is nearly identical to the delegation provision at issue here,[4] I am bound to follow the precedent of the Missouri Supreme Court and hold that the delegation provision is not illusory. I am similarly bound to follow the *Soars* reasoning that the delegation provision constitutes a "mutual promise to arbitrate any threshold questions," and is thus a valid bilateral contract supported by bargained-for consideration. *Id*.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel arbitration [9] is GRANTED, and plaintiff must submit his claims to arbitration.

**IT IS FURTHER ORDERED** that this case is staying pending completion of the arbitration.

---

[4] "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. 2018).

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case, subject to the right of either party to move to reopen it, if appropriate, upon completion of the arbitration.

                                                   _____
                                                   CATHERINE D. PERRY
                                                   UNITED STATES DISTRICT JUDGE

Dated this 17th day of September 2019.